KOSHIBA PRICE GRUEBNER & MAU
CHARLES A. PRICE, ESQ., Hawaii State Bar #5098
1003 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 523-3900
Facsimile: (808) 526-9829
Email: cprice@koshibalaw.com

WEINTRAUB TOBIN CHEDIAK
COLEMAN GRODIN law corporation
PAUL E. GASPARI, ESQ., California State Bar #76496
(pending admission *pro hac vice*)
DANIEL C. ZAMORA, ESQ. California State Bar #224375
(pending admission *pro hac vice*)
475 Sansome Street, Suite 1800
San Francisco, CA 94111-3211
Telephone: (415) 433-1400
Facsimile: (415) 433-3883
Email: pgaspari@weintraub.com
dzamora@weintraub.com

Attorneys for Defendant
GARY WAYNE GODDARD

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL F. EGAN, III,<br><br>Plaintiff,<br><br>vs.<br><br>GARY WAYNE GODDARD,<br><br>Defendant.<br>_____ / | CASE NO. 1:14-cv-00189-SOM-BMK<br><br>**DECLARATION OF GARY WAYNE GODDARD IN SUPPORT OF DEFENDANT GARY WAYNE GODDARD'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Complaint Filed: April 21, 2014 |

I, Gary Goddard, declare as follows:

1. I have personal knowledge of the facts stated herein and if called upon to testify, I could and would competently testify thereto.

**My Biographical Information**

2. In 1974, I began my entertainment career with The Walt Disney Company, where I started as a director, and later rose to the level of Show Manager in the Entertainment Division. I then went to work with Walt Disney Imagineering, where I developed concepts for EPCOT and The World Showcase, Tokyo Disneyland, and for River Country at Walt Disney World.

3. In 1980, I started my own business, Gary Goddard Productions, an entertainment production company. In 1985, my company became Landmark Entertainment Group. Landmark is responsible for producing such highly regarded works as The Forum Shops At Caesar's Palace, Caesar's Magical Empire, Terminator 2/3D at Universal Studios Florida, Jurassic Park: The Ride at Universal Studios Hollywood, The Amazing Adventures of Spider-Man 3D Ride at Universal's Islands of Adventure, and for the design and production of countless attractions, resorts and live entertainment productions around the world.

4. In 2002, I left Landmark and started a new company, Gary Goddard Entertainment. This company provides design and planning services for Resort Hotels, Casinos, destination resorts, and for other attractions around the world. Currently we are best known as the designers of The Galaxy Macau, a 3000 room destination casino resort in Macau, and for The Ring of Harmony, a 55-story metal ring that is the symbol of Shenfu New Town in China. Currently, there are several new hotels, casinos and attractions that we have designed which are under construction in Macau, China, and Korea.

5. I have also has been actively involved in Broadway theatre, including the Tony-Award winning revival of "Hair" on Broadway in 2009, "Reasons to Be Pretty," and am currently in production on "Broadway 4D" for the Times Square Theater on 42nd Street in New York.

6. In addition, my companies have been involved in developing attractions for major companies all over the world, including Universal Studios, Six Flags and The Forum Shops at Caesar's Palace. My most famous theme park attractions include: "The Amazing Adventures of

Spider-Man," "Terminator 2/3D: Battle Across Time," "Jurassic Park: The Ride," "Star Trek: The Attraction," and "Caesar's Magical Empire."

7. I have received honors, accolades and awards from multiple organizations including, but not limited to, being presented with multiple Themed Entertainment Association (TEA) Awards (excellence in theme design), a Tony Award for Hair on Broadway, a Drama Desk Award, and was named as inventor on patents for creating key technology for the Jurassic Park, Terminator 2/3D, and Amazing Adventures of Spider-Man attractions.

### This Lawsuit Has Already Caused Me Irreparable Harm

8. My character and reputation mean everything to me, personally and professionally. The entertainment business is a profession of relationships and reputation. My ability to continue to earn a livelihood in the entertainment industry has been threatened and placed in jeopardy by plaintiff Michael Egan's ("Plaintiff") slanderous accusations.

9. Before Plaintiff ever served me with the Complaint or an opportunity to contest his slanderous accusations, Plaintiff and his counsel held a national press conference falsely and maliciously claiming that I engaged in sexual relations with him while he was under age. The content of these lies disseminated at the press conference has, in turn, been republished countless times in the television, newspaper and online press.

### This Is The Second Time I have Been Targeted For Financial Gain By Plaintiff

10. I do not deny that I had met Plaintiff before this lawsuit was filed. However, I **vehemently deny** that I ever engaged in sexual relations with him or touched him sexually in any way at any time. This lawsuit is now the second time that I have been the victim of a financial attack by Plaintiff. In 2005, Plaintiff approached me about needing money to invest in a Halloween-theme attraction in Las Vegas, Nevada. I loaned Plaintiff $25,000, as evidenced by a promissory noted signed by Plaintiff in my favor, a true and correct copy of which is attached hereto as Exhibit "A," and incorporated herein by this reference. In connection with the promissory note, I provided Plaintiff with $25,000.

11. Plaintiff never repaid me a single dollar of that money. Until Plaintiff's media press conference for this lawsuit, I had not even heard from Plaintiff since he had absconded with

my money.

### I Have Never Had Any Continuous Or Systematic Contacts With Hawaii

12. I have continually resided and maintained my primary residence and domicile in the State of California since 1997 through the present.

13. Neither I, nor any business of mine, have ever owned real or personal property in Hawaii. Neither I, nor any business of mine, have ever held any bank accounts, brokerage accounts, escrowed funds, or other financial assets in Hawaii.

14. I have never had any employees in Hawaii nor have I, nor any business of mine, ever had any telephone listings, post office boxes, or mailing addresses in Hawaii. Neither I, nor any business of mine, have ever had any registered agent for service of process in Hawaii.

### I Was Not In Hawaii At Any Time During The Period Claimed By Plaintiff

15. I have never traveled to Hawaii with Plaintiff nor have I ever been on a trip to Hawaii where I saw, met or associated with Plaintiff, whether in 1999, or at any time.

16. I attach hereto as Exhibit "B," and incorporate herein by this reference, a summary of all of my scheduled appointments, activities and travel for each day between August 1, 1999 through October 31, 1999. The summary is presented in calendar form with my geographic location identified for each day during that period (hereinafter as "Calendar Chart"). The itemized entries on the Calendar Chart were compiled from my business calendar, business daily planner, business journal, receipts and/or ticket stubs (attached as exhibits C through G below) that I have continually maintained in my possession and control since creation. On the occasion when no appointment, activity or travel information was available for a particular day within the period August 1, 1999 and October 31, 1999, that fact is reflected on the Calendar Chart by the notation "No entries." The underlying documents (exhibits C through G) used to create the Calendar Chart are specifically identified, explained and attached below.

17. In connection with my entertainment business, I, and my secretary working under my direction and supervision, have consistently and in the regular course of my business, kept written entries of, among other things, my scheduled activities, appointments and travel in (1) a business daily planner, (2) a business calendar and (3) a business journal. I have also regularly

kept and maintained in the regular course of my business, ticket stubs and advertising brochures from the shows, plays or musicals I attend. Keeping written record of these things has been my regular business practice since 1989, which practice has continued to this day.

18. Specifically, in 1999, in connection with my work for Landmark Entertainment Group, in the regular course of my business activities with Landmark, I kept and recorded written entries of my activities in my business journal, while my secretary in her handwriting, acting pursuant to my direction and supervision in the regular course of my business and pursuant to her business duties, regularly kept separate scheduled appointment, activity and travel information in my business calendar and business daily planner. In my journal, I also kept, in many cases, ticket stubs and other items which were attached to the front pages of my business journal at the time that I personally attended these events. Attached hereto as Exhibit "C," and incorporated herein by this reference, are true and correct copies of the pages from my business calendar during the time period from August 1, 1999 through October 31, 1999, inclusive. Attached hereto as Exhibit "D," and incorporated herein by this reference, are true and correct copies of the pages from my business daily planner during the time period from August 1, 1999 through October 31, 1999, inclusive. Attached hereto as Exhibit "E," and incorporated herein by this reference, are true and correct copies of the pages from my business journal during the time period from August 1, 1999 through October 31, 1999, inclusive. In order to protect confidential financial and third-party information, the financial information from my business journal and the telephone numbers of third-parties in my business calendar and business daily planner were redacted.

19. The entries in my business calendar (Exhibit C), daily planner (Exhibit D) and business journal (Exhibit E) were all made by me at or near the time of the entries recorded therein, in the regular course of my business with Landmark Entertainment Group, when I had firsthand knowledge of the matters therein and when the matters were fresh in my mind.

20. Since my business calendars, business daily planners and business journals were created, I have continually kept and maintained them in my possession and control, and in my regular course of business, including those specific pages from my business calendar, business daily planner and business journal that are attached as Exhibit C through E, hereto. I am a

custodian of records for Exhibits C through E. The pages from my business calendar (Exhibit C), business daily planner (Exhibit D) and my business journal (Exhibit E) are kept in spiral-bound form, but have been copied as detached, separate pages solely for the purpose of this motion.

21. I have reviewed the contents of each page of my business calendar, business daily planner and business journal between August 1, 1999 through October 31, 1999.

22. Also, after learning of Plaintiff's current lawsuit against me, I began to search for receipts of purchases that I made during the time period from August 1, 1999 through October 31, 1999. Based on the receipts I have been able to locate thus far, I also attach collectively hereto as Exhibit "F," and incorporate herein by this reference, receipts for purchases that I personally made from August 1, 1999 through October 31, 1999. The receipts were generated at the places, dates and/or times designated on the receipts. All signatures appearing on the receipts in Exhibit F are mine. These receipts have been continually kept in my possession and control since I received them. In order to protect my financial information, the credit card numbers on the receipts were redacted.

23. Also in connection with my search for records, I have located additional ticket stubs for events that I attended during the period from August 1, 1999 through October 31, 1999. The tickets, which became ticket stubs, were personally used by me to attend the events and shows at the places and on the dates and/or times designated in the stubs. These ticket stubs have been continually kept in my possession and control since I received the tickets. These additional ticket stubs are attached collectively hereto as Exhibit "G," and incorporated herein by this reference.

24. Because the pages reflecting my appointments, activities and travel between August 1, 1999 and October 31, 1999 (from my business calendar, business daily planner, business journal, receipts and/or additional ticket stubs) were voluminous, totaling over 300 pages, the information was summarized in the Calendar Chart.[1]

25. Based on the activities, appointments and travel information identified in my

---

[1] Defendant Gary Goddard moves to admit this summary into evidence pursuant to Federal Rule of Evidence 1006.

{SF029392.DOC;3} 6

**DECLARATION OF GARY WAYNE GODDARD IN SUPPORT OF DEFENDANT GARY WAYNE GODDARD'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

business calendar, business daily planner, business journal, receipts and ticket stubs, and having refreshed my recollection based thereon as to my geographic locations on the days from August 1, 1999 to October 31, 1999, and for the Court's convenience, my geographic locations for each day during that period were added to the Calendar Chart. My geographic locations during this time period are as follows:

- **8/1/99 – I was in California.**
- **8/2/99 – I was in California.**
- **8/3/99 - I was in California.**
- **8/4/99 - I was in California and flew to Florida.**
- **8/5/99 – I was in Florida.**
- **8/6/99 – I was in Florida.**
- **8/7/99 – I was in Florida.**
- **8/8/99 – I was in Florida.**
- **8/9/99 – I was in Florida and flew to Missouri.**
- **8/10/99 – I was in Missouri.**
- **8/11/99 – I was in Missouri and flew to California**
- **8/12/99 – I was in California.**
- **8/13/99 – I was in California.**
- **8/14/99 – I was in California.**
- **8/15/99 – I was in California.**
- **8/16/99 – I was in California.**
- **8/17/99 – I was in California.**
- **8/18/99 – I was in California.**
- **8/19/99 – I was in California.**
- **8/20/99 – I was in California.**
- **8/21/99 – I was in California.**
- **8/22/99 – I was in California.**
- **8/23/99 – I was in California.**

{SF029392.DOC;3}  7
**DECLARATION OF GARY WAYNE GODDARD IN SUPPORT OF DEFENDANT GARY WAYNE GODDARD'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

- 8/24/99 – I was in California and flew to New York.
- 8/25/99 – I was in New York.
- 8/26/99 – I was in New York.
- 8/27/99 – I was in New York and flew to Toronto, Canada.
- 8/28/99 – I was in Toronto, Canada.
- 8/29/99 – I was in Toronto, Canada and flew to California.
- 8/30/99 – I was in California.
- 8/31/99 – I was in California.
- 9/1/99 – I was in California.
- 9/2/99 – I was in California.
- 9/3/99 – I was in California.
- 9/4/99 – I was in California.
- 9/5/99 – I was in California.
- 9/6/99 – I was in California.
- 9/7/99 – I was in California.
- 9/8/99 – I was in California.
- 9/9/99 – I was in California.
- 9/10/99 – I was in California.
- 9/11/99 – I was in California.
- 9/12/99 – I was in California and flew to New York.
- 9/13/99 – I was in New York.
- 9/14/99 – I was in New York.
- 9/15/99 – I was in New York and flew to California.
- 9/16/99 – I was in California.
- 9/17/99 – I was in California.
- 9/18/99 – I was in California.
- 9/19/99 – I was in California.
- 9/20/99 – I was in California.

- 9/21/99 – I was in California.
- 9/22/99 – I was in California.
- 9/23/99 – I was in California.
- 9/24/99 – I was in California.
- 9/25/99 – I was California.
- 9/26/99 – I was in California.
- 9/27/99 – I was in California.
- 9/28/99 – I was in California.
- 9/29/99 – I was in California.
- 9/30/99 – I was in California and flew to Toronto, Canada.
- 10/1/99 – I was in Toronto, Canada.
- 10/2/99 – I was in Toronto, Canada.
- 10/3/99 – I was in Toronto, Canada.
- 10/4/99 – I flew from Toronto, Canada to California.
- 10/5/99 – I was in California.
- 10/6/99 – I was in California.
- 10/7/99 – I was in California.
- 10/8/99 – I was in California.
- 10/9/99 – I was in California.
- 10/10/99 – I was in California.
- 10/11/99 – I was in California.
- 10/12/99 – I was in California.
- 10/13/99 – I was in California.
- 10/14/99 – I was in California.
- 10/15/99 – I was in California.
- 10/16/99 – I was in California.
- 10/17/99 – I was in California.
- 10/18/99 – I was in California.

- 10/19/99 – I was in California.
- 10/20/99 – I was in California.
- 10/21/99 – I was in California.
- 10/22/99 – I was in California.
- 10/23/99 – I was in California.
- 10/24/99 – I was in California.
- 10/25/99 – I was in California.
- 10/26/99 – I was in California.
- 10/27/99 – I was in California.
- 10/28/99 – I flew from California to Nevada.
- 10/29/99 – I flew from Nevada to California.
- 10/30/99 – I was in California.
- 10/31/99 – I was in California.

I declare under penalty of perjury that the matters stated in this Declaration are true and correct.

Dated this 21st day of May, 2014, at New York, New York.

_____
GARY GODDARD